## Lucot *v.* Rodgers, Appellant.

*Trespass—Waters—Negligence—Measure of damages.*

In an action of trespass to recover damages for injuries to a retaining wall and a house, the evidence for plaintiff tended to show that plaintiff's house was situated on the lower side of a street which was cut out of a hillside, and that the retaining wall was built along the lower line of the street to protect the house and lot; that defendant deposited a large amount of earth upon the street in such a way that the water was stopped from flowing along the street, and soaked down through the earth, loosening

the hillside so that its downward pressure injured the wall and the house. Defendant denied that he had placed any large quantity of earth upon the street.  *Held,* that a verdict and judgment for plaintiff should be sustained.

In such a case the measure of damages was the cost of remedying the injury, unless such cost exceeded the value of the property injured, when such value became the measure.

Argued Oct. 25, 1893.   Appeal, No. 109, Oct. T., 1893, by defendant, Michael Rodgers, from judgment of C. P. No. 1, Allegheny Co., June T., 1891, No. 726, on verdict for plaintiff, Eugene Lucot.   Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL and THOMPSON, JJ.

Trespass for injuries to retaining wall and house.

The court charged in part as follows, by SLAGLE, J.

" Mr. Lucot owned a lot of ground fronting 60 feet on Elliott street, in the Thirty-sixth ward of the city of Pittsburgh, and running back towards Steuben street, a distance of 50 feet. This lot and the street itself are on a hillside.   Long before Mr. Lucot owned the property a wall had been built along the line of his property to hold up the street.   Naturally a street in a location such as that would be made by cutting into the hillside on one side, and filling it on the other, so as to make a level road.  ` That was probably what was done here, and this wall was built for the purpose of holding up the street in its place and protecting the lot.

" The theory of the plaintiff, as I understand it, both from the pleadings and the evidence, is this :  That the water coming down upon Elliott street was accustomed to flow along the gutter or drain that was on the upper side of this road, and flowed down the hillside until it reached a point some distance below Mr. Lucot's property, some forty or fifty feet probably, where it crossed the roadway into the property of Mr. Rodgers and Mr. Kim, and found its way down to Steuben street in that way, and that for fifteen or seventeen years water had flowed that way ; that the street had been maintained in that way, although filled up from time to time and leveled off, and that his wall stood intact ; that Mr. Rodgers in 1889 threw some earth upon this street, and in 1890 threw a large quantity on the street at different times, to the extent of four or five feet over the whole way, and that he placed it at a point below his line

opposite Mr. Christ's lot in such a way that it stopped the water
from flowing along the street, and made it stop in front of his
property, and this earth that was thrown on the street not be-
ing packed, the water soaked down through that earth and
loosened it; that the whole hillside, the loose earth in the street,
pressed against this wall and pushed it over; that this allowed
the water to go through the lower part of the wall; that it got
under his house, worked into the lower foundation there, broke
it up and his house fell, and the wall was shoved bodily over
some feet into the lot.

" Now, that is the theory upon which he bases his claim, and
he says that this injury that was caused in this way was the re-
sult of Mr. Rodgers' putting the earth upon that street in such
a way as to shut off the natural flow of the water down the
hillside, stopping it and letting it soak into the ground. In
order to recover you must be satisfied from the evidence, not
beyond a reasonable doubt, but simply by the weight of the
evidence, that that was the cause of the injury to the house,
and that Mr. Rodgers did what he is charged with doing, namely,
put that earth there in such a way as to stop the water and let
it soak in, and thus destroy the wall and the house. . . .

" But Mr. Rodgers says he didn't put it there, that all he put
was a few wheelbarrow loads at one time; then he was stopped,
and then he put some shale and broken stone into the wagon
ruts that were made, but did not fill the ground up in any
way; and at another time he possibly put a few loads on it.
If he did not put the earth on that street that had the re-
sult of stopping this water and allowing it to soak into the
ground, then of course he is not responsible. If somebody else
did it he cannot be held responsible for it; he is only respon-
sible for his own acts. So you will have to find in the first
instance, in order to enable the plaintiffs to recover, that the
damage was occasioned by the stopping of the water upon this
street and allowing it to soak in behind the wall; and secondly
that Mr. Rodgers, either himself or by his employees, placed
the earth there so as to cause the water to stop and cease to
flow as it had been accustomed to flow along the street.

" If you find those two points in favor of the plaintiff you
will then find what was the damage. The measure of damage
is simply compensation. He is entitled to compensation for

the damage actually sustained. In a case like this it is impossible to reduce the evidence to an actual calculation by the jury. From its very nature it is indefinite, and therefore all that is required of the plaintiff is that he give you the facts from which you can fairly estimate the actual damage done, and that, having been ascertained, is what he is entitled to recover. In reference to that, cost is some evidence of value, but it is not conclusive, and sometimes it is very wide of the mark. A man may pay entirely too much for his property, or he may build a house on property which by its very nature, its location, the surroundings, is unfit for the location, and therefore of a less value than what it actually cost.

" You will take into consideration, if you get to this point, the location of the property, its surroundings and its value as given by the witnesses. The house it appears was wholly destroyed. Mr. Schwartz (I think that was the name of the gentleman) testified he had been called in by Mr. Lucot, or went there in some way, to look at this house; that it was in very bad shape, but he did not at that time advise Mr. Lucot to leave, although he thought there might be some danger. In about a month afterwards he went there and told the plaintiff he must get out at once, that the house would fall; and he got out and the house was taken down.

" [In estimating the damages you will take first the damages to the wall. This wall was pushed out, as you understand, bodily, and stands there intact, presumably, just cut off at the base from the ground and shoved off bodily. That it stands there intact shows it was a very well built wall, otherwise it would have been tossed over and broken. But that wall may have cost more than the lot was worth, and therefore the cost of it is not what he is entitled to receive, but what it was worth in that place. It might be after the wall was built the whole lot would not be worth as much as the wall cost; that is very possible. If so he would not be entitled to recover the cost of putting the wall at a place where it was not worth what it cost to put it there, but only what it was worth when there. And then deduct from that what the stone and material in the wall were worth as they appear on the ground there now. Of course there has been no special evidence given of that, but you must estimate it. You must take that in view, and, instead of giving

the actual value of the wall, give it less what the material would probably be worth. In reference to the house do the same thing. The house, Mr. Lucot says, was worth about a thousand dollars, but it may not have been worth that there, or it may have been worth more. Whatever it was worth you should give, less what in your judgment the foundations and the material probably would be worth torn down. Most of you would know whether it would be worth any more than the cost of taking down the house. He is entitled to have that lot placed in a condition such as it was before. Having estimated that, then you would find that as the damage done, and for that he is entitled to recover if the injury was caused, as he alleges, by the stopping of the water upon the street and allowing it to go through into his property, and if it was caused by the acts of Mr. Rodgers, the defendant.]" [1]

Defendant's points were among others as follows:

" 1. The defendant's land being located above the plaintiff's land, there was an easement or right on the plaintiff's land for the discharge of all waters which by nature rise in, flow or fall upon his said land, and the lower land must necessarily be subject to all the natural flow of water from the upper one ; the inconvenience arises from its position. *Answer:* Refused. This is a correct statement of law, but is not applicable to this case." [2]

" 2. If the jury should find from the evidence in this case that the clay or débris, which the plaintiff alleges was placed on and along said Elliott street by said Rodgers, did not collect any other or extra water than what was accustomed to gather in or flow on said Elliott street in front of the plaintiff's property, then, unless they find that the placing of said clay and débris on said Elliott street in front of said Lucot's property caused a new channel to be formed whereby the said water was thrown upon the plaintiff's lands causing damage thereto, the verdict of the jury should be for the defendant. *Answer:* Affirmed, if a ' new channel' includes the soaking into and percolating through the ground. You will observe that this point says that if ' any other or extra water than what was accustomed to gather in and flow on said Elliott street ' is brought there ; and that no ' new channel was caused by which it was thrown upon the plaintiff's ground.' That means that the water was

allowed to flow down the gutters, if there are any there on that street, as it had done before, and therefore there was no interference. If so, this is affirmed." [3]

" 3. If the jury should find from the evidence in this case that Michael Rodgers did throw or put clay, stone or débris on said street along and in front of the property of said Lucot to the depth of five feet in the repairing of said street so as to make the same fairly passable for vehicles or wagons, and if the jury should further find that there was a fall in said street along and in front of the plaintiff's property on Elliott street eastwardly of seven and two tenths feet in length of one hundred and fifty feet after said clay was put on; then if the water naturally falling and flowing upon said Elliott street would soak into and through said clay, stone and débris so placed in said street, and come out on or fall upon the lands of the plaintiff, the verdict of the jury should be in favor of the defendant. *Answer :* Refused. This point asks the court to draw a conclusion from the facts, and the statement of facts is not full. If the water naturally falling upon the ground by the act of defendant was caused to soak into or run upon plaintiff's land, which, except for such acts, would have flowed away, defendant is liable for the .damage caused thereby." [4]

" 5. If the jury should find from all the evidence in the case, that the plaintiff's land, situated as it is, on a steep hillside, is liable to slip or slide from Elliott street towards Steuben street, then the plaintiff must satisfy the jury by the weight of the evidence that the damages were not caused thereby, but that the same were caused by the acts of the defendant or agent in casting the water on the plaintiff's land. *Answer :* Affirmed. This simply means that the plaintiff must satisfy you that the damage was caused by the acts of defendant, and, if he has shown you that, it would follow that it was not caused by natural slipping." [5]

" 6. The burden of proving the damages is upon the plaintiff, and if the jury should find that the plaintiff has failed to show such damages or measure of damages as would enable the jury to properly estimate the same, then, even if the jury should believe that the plaintiff was entitled to recover, the verdict should be only for nominal damages. *Answer :* Affirmed. But this does not require exact evidence, but facts which will enable the jury to fairly estimate the damages." [6]

Verdict and judgment for plaintiff for $1,400.   Defendant appealed.

*Errors assigned* were (1-6) instructions, quoting them.

*James Fitzsimmons, John S. Robb* and *L. K. Porter* with him, for appellant, cited: Peck v. Smith, 1 Conn. 132; Sentner v. Tees, 132 Pa. 216.

*Charles L. Powers*, for appellee, cited: Lentz v. Carnegie Bros. & Co., 145 Pa. 612; Ottawa Gas Co. v. Graham, 28 Ill. 73; 1 Sedgwick, Measure of Damages, 135; Day v. Woodworth, 13 How. 363.

OPINION BY MR. CHIEF JUSTICE STERRETT, Dec. 30, 1893:
. The charge of the learned trial judge is so full and accurate that further discussion of the questions of law involved in this case is unnecessary.

Judgment affirmed.