# Bigham v. Wabash-Pittsburg Terminal Railway Company, Appellant.

*Contract—Illegal contract—Change of grade or road—Municipal and property owners' consent.*

1. The fact that a contract involves the change of grade of a public road, and that the consent of the municipality and of the property owners is necessary to the accomplishment of the work under the contract, does not make the contract void and illegal ab initio. The presumption is that such consent had been obtained or could be secured, and in either event the contract would be perfectly valid.

*Contract—Breach of contract—Measure of damages.*

2. In an action to recover damages for the breach of a contract it appeared that the defendant, a railroad company, needed a place to dump earth. The plaintiffs having such a place, the parties entered into an agreement by which the defendant secured a license or privilege to deposit on plaintiffs' land so much earth, estimated at 150,000 cubic yards, as would be necessary to make a certain grade agreed upon. When the defendant had deposited about half the amount of earth estimated it stopped work. *Held,* that the measure of damages for the breach of the contract was the difference in value of the plaintiffs' lands with the fill completed, and as it was at the time of the breach, with the fill only partially made.

3. In such a case it is error to permit the plaintiffs to recover an amount determined by multiplying the difference between the number of cubic yards actually filled and 150,000 cubic yards, by the estimated cost per cubic yard.

4. In such a case where the defendant denies any obligation to fill plaintiffs' property with 150,000 cubic yards, it is not necessary for it to specifically deny its obligation to furnish the difference between the number of cubic yards actually filled and 150,000 cubic yards, as alleged in the statement of claim. The denial of the defendant's liability to furnish the greater amount necessarily includes the lesser, and is sufficient to put upon plaintiffs the burden of establishing not only the contract, and the liability of the defendant under it, but the damages suffered by reason of the alleged breach.

5. Plaintiffs must prove the amount of damages claimed by them for breach of contract, or they will only be entitled to nominal damages. Failure to deny the amount of damages alleged to have been sustained, does not admit them.

6. If there be different modes of measuring damages, depending on the circumstances, the court should first hear the evidence and instruct the

jury afterwards as to the proper measure to be applied. The underlying principle in such cases is that the damages must be such as might naturally be expected to follow a breach of the contract, keeping in mind the benefit which the contracting parties had in contemplation when the agreement was entered into.

Argued Oct. 21, 1908. Appeal, No. 96, Oct. T., 1908, by defendant, from judgment of C. P. No. 3, Allegheny Co., Aug. T., 1905, No. 174, in case of Kirk Q. Bigham and Thomas B. Hutchinson v. Wabash-Pittsburg Terminal Railway Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Assumpsit for breach of contract. Before KENNEDY, P. J.

At the trial it appeared that the agreement, for the breach of which the suit was brought, was as follows:

"Made November —, 1901, between Kirk Q. Bigham and the Pittsburg, Carnegie & Western Railroad Company, Witnesseth:

"That said Bigham doth hereby consent and agree that said company shall build a tramway along the easterly hillside of the Little Saw Mill Run valley from the end of the big cut on line of the Pittsburg, Carnegie & Western Railroad to Banksville avenue, and along Banksville avenue from the Mission School lot to the City line, and with the waste material from the grading of said road amounting to about one hundred and fifty thousand (150,000) cubit yards fill out level from the said hillside to and across Banksville avenue at a grade beginning at Woodville Avenue and rising four (4) feet per hundred feet until a sufficient height be reached to provide for said material by a uniform grade from said point to the City line, making said fill in successive strips running the whole distance.

"In consideration whereof, said company agrees to cross South Hill avenue with its tramway at a grade in such a manner as not to interfere with the use of said avenue; that no earth or other material shall be deposited on land of said Bigham et al. above the grade of Banksville avenue, to be established as aforesaid; that all said material shall be so placed as to make a uniform level surface, the whole width of said Banks-

ville avenue extending at grade to said hillside from the Mission School lot to the city line and carrying Banksville avenue through to Woodville avenue, and shall be left smooth and in good surface, and further that said work shall be done under the supervision of said Bigham and in accordance with the directions by him from time to time given so far as his interests are affected."

Defendant presented these points:

1. The undisputed proof being that the property of the plaintiffs abutted on Banksville avenue, and said avenue having been used as a highway for the public for thirty years past, and being a highway in the city of Pittsburg, it would have been unlawful for the defendant to fill over and across such highway, as provided, as plaintiffs contend, in the contract, and the plaintiffs can recover no damages because of defendant's refusal to fill over and across such avenue. *Answer:* Refused. [22]

2. It being the undisputed evidence in the case that to make the fill the plaintiffs demand and which the plaintiffs contend is as specified in the contract sued on, exhibit "A," attached to the statement of claim, over and across Banksville avenue, would have required the defendant to fill into and at places clear across Saw Mill Run, a well-defined and continuous stream of water, thus preventing the flow of water in said stream, or forcing said waters against and over properties of others than the plaintiffs, and to make such fill extending over and across Banksville avenue, would require defendant to commit an unlawful act and a private and public nuisance. Therefore plaintiffs cannot recover damages for nonperformance by defendant of an act which it would have been unlawful for it to perform. *Answer:* Refused. [23]

3. That the measure of damage is the difference in value of the plaintiffs' land with the work as now done upon it by defendant and the value it would have had had defendant made the fill as contended for by plaintiffs. *Answer:* Refused. [24]

4. If the additional filling the plaintiffs demand would not increase the value of their land, they cannot recover. *Answer:* Refused. [25]

5. Under all the evidence in the case the plaintiffs can recover at best only nominal damages. *Answer:* Refused. [26]

6. Under all the pleadings and evidence, the verdict must be for the defendant. *Answer:* Refused. [27]

The court charged the jury as follows:

[You have heard the testimony on behalf of the plaintiffs tending to establish the correctness of their claim, and that evidence is uncontradicted; therefore I instruct you that under the pleadings and evidence in this case your verdict must be for the plaintiffs for the amount claimed in the statement of claim, with interest from the date of the suit. Counsel for plaintiffs has asked me to charge you as follows: That under all the pleadings, evidence and admissions in this case, the verdict of the jury should be for the plaintiffs for the amount claimed in plaintiffs' statement of claim, with interest thereon from the date of bringing suit. This point is affirmed.] [28]

Verdict and judgment for plaintiffs for $41,526. Defendant appealed.

*Errors assigned* among others were (22–28) above instructions, quoting them.

*Wm. Watson Smith*, with him *George B. Gordon, Willis F. McCook* and *B. J. Jarrett*, for appellant.—The contract was illegal: O'Brien v. Philadelphia, 150 Pa. 589; Hancock v. Wyoming Borough, 148 Pa. 635; Jones v. R. R. Co., 151 Pa. 30; City of New Haven v. R. R. Co., 62 Conn. 252 (25 Atl. Repr. 316); Shortall v. Fitzsimons & Connell Co., 93 Ill. App. 232; Trustees v. Oyler, L. R. 31 Chancery Div. 412; Eastern Expanded Metal Co. v. Webb Granite, etc., Co., 81 N. E. Repr. 251; American Mercantile Exchange v. Blunt, 102 Maine, 128 (66 Atl. Repr. 212); Smith v. Luning Co., 111 Cal. 308 (43 Pac. Repr. 967); Wilcox Mfg. Co. v. Brazos, 74 Conn. 208 (50 Atl. Repr. 722); Sussman v. Porter, 137 Fed. Repr. 161; Spalding v. Ewing, 149 Pa. 375; Marshall v. R. R. Co., 57 U. S. 314; Doane v. Ry. Co., 160 Ill. 22 (45 N. E. Repr. 507); Tool Co. v. Norris, 69 U. S. 45; Oscanyan v. Arms Co., 103 U. S. 261;

Woodstock Iron Co. v. Richmond, etc., Extension Co., 129 U. S. 643 (9 Sup. Ct. Repr. 402).

In case of nonperformance of contract, the damages are to be estimated as of the date of the breach and not as of any subsequent time: Morse, Williams & Co. v. Arnfield, 15 Pa. Superior Ct. 140.

The court below accepted the view that the defendant not having denied the damages, as alleged in the statement of claim, it was precluded thereby, there being no such issue raised in the pleadings. It was impossible for the defendant to raise such an issue until the plaintiffs had laid the ground for the same by an averment of the proper damages in their statement of claim. The defendant cannot certainly be called upon to deny something that is not averred in the statement of claim: Emig v. Spat, 155 Pa. 642; Howell v. Bennett, 81 N. Y. Sup. Ct. 555; Lucot v. Rodgers, 159 Pa. 58; Electric Co. v. Thackara Mfg. Co., 167 Pa. 530.

It is difficult to point out in advance what the true rule for damages should be, but when the rule applied leads to erroneous result we know it is not the proper rule: McKnight v. Ratcliff, 44 Pa. 156; Seely v. Alden, 61 Pa. 302; Theiss v. Weiss, 166 Pa. 9; Keck v. Bieber, 148 Pa. 645; Kunkel v. Wherry, 189 Pa. 198; Penna. R. R. Co. v. Plank Road Co., 71 Pa. 350; White v. McLaren, 151 Mass. 553 (24 N. E. Repr. 911); West Chester & Phila. R. R. Co. v. Broomall, 18 W. N. C. 44; Watterson v. Allegheny Valley R. R. Co., 74 Pa. 208; Hays v. Street Ry. Co., 204 Pa. 488; Rabe v. Coal Co., 213 Pa. 252.

*Thomas Patterson,* of *Patterson, Sterrett & Acheson,* with him *R. B. Petty* and *R. P. Marshall,* for appellees.—We contend that the contract was lawful, and that it must be presumed in this case that the municipal authorities consented to its performance: McNeill v. Reid, 9 Bing. 68; Hobbs v. McLean, 117 U. S. 567 (6 Sup. Ct. Repr. 870); McCandless v. Steel Co., 152 Pa. 139; Favor v. Philbrick, 7 N. H. 326; Marcy v. Crawford, 16 Conn. 549; Avery v. Halsey, 31 Mass. 174; Coventry v. Barton, 17 Johns. 142; Ives v. Jones, 25 N. C. 538.

The statement of claim made out the plaintiffs' right to re-

cover damages for nonperformance. It therefore was the duty of defendant to set out in his affidavit of defense directly and specifically the matters relied on as a defense to the action: Moore v. Ins. Co., 196 Pa. 30; O'Hare v. Second National Bank, 77 Pa. 96; Braunn v. Keally, 146 Pa. 519; Sigua Iron Co. v. Vandervort, 164 Pa. 572; Bair v. Hubartt, 139 Pa. 96; Carpet Co. v. Latimer, 165 Pa. 617; Organ Company v. Ecker, 184 Pa. 350; Brennan's Estate, 65 Pa. 16; Gannon v. Fritz, 79 Pa. 303; Bank v. Henning, 171 Pa. 399; Todd v. Insurance Co., 9 Pa. Superior Ct. 379.

The primary rule in case of the partial failure to perform a contract to do a certain work, is that the party injured is entitled to recover the costs and expenses reasonably necessary to make the work conform to the requirements of the contract, on the principle that the plaintiff is entitled to work such as he contracted for: Stillwell, etc., Mfg. Company v. Phelps, 130 U. S. 520 (9 Sup. Ct. Repr. 601); Smethurst v. Woolston, 5 W. & S. 106; Morris v. Parham, 4 Phila. 62; Erie & Pittsburg R. R. Co. v. Johnson, 101 Pa. 555; Carli v. Seymour, 26 Minn. 276; St. L., etc., R. R. Co. v. Lurton, 72 Ill. 118; Lawton v. Fitchburg R. R. Co., 62 Mass. 230; Broumel v. Rayner, 68 Md. 47 (11 Atl. Repr. 833).

OPINION BY MR. JUSTICE ELKIN, January 4, 1909:

This is an action of assumpsit to recover damages for the breach of a contract. A number of the assignments of error relate to the legality of the contract and are predicated upon the theory that appellant company undertook to do what it could not do without the consent of the municipality and adjoining property owner, and if such consent could not be obtained, the undertaking was illegal and the contract void. On this question we agree with the conclusion reached by the learned trial judge and with the views expressed by counsel for appellees. There is nothing on the face of the contract to indicate an illegal purpose. The mere fact that it involved a change of grade in an old road over which the public had an easement did not make the purpose unlawful and the contract void ab initio. It only required the consent of the city and the adjoining prop-

erty owner to do everything the contracting party agreed to do. The presumption is that such consent had been obtained or could be secured, and in either event the contract would be perfectly valid. If appellant did not or could not secure such consent, the facts relied on should have been set out in the affidavit of defense. The general averment that the contract had been performed so far as it was lawful is not sufficient under the pleadings and rules of court, and the testimony offered relating to this question was properly excluded.

As to the measure of damages, our view is different. The learned court below directed a verdict for plaintiffs for the full amount claimed in the declaration, together with accrued interest thereon. The amount was determined by multiplying the number of cubic yards necessary to complete the fill as set out in the statement of claim, by the estimated cost per cubic yard averred in the declaration. In other words, the measure of damages was held to be the cost of completion. It was further held that if appellant desired to controvert the fact as to the number of cubic yards alleged to be necessary to complete the fill or the cost thereof, these matters should have been set up in the affidavit of defense. With this position we do not agree. The affidavit of defense denies that appellant ever covenanted to fill plaintiff's property with 150,000 cubic yards of earth or to place any specific amount of waste material upon the same. Since the alleged amount of earth required to complete the fill is arrived at in the statement of claim by deducting from the estimated number of cubic yards required to make it, the number of cubic yards already deposited, it would seem like sticking in the bark to say that appellant should be denied the right to raise the question of its liability to furnish the whole number of cubic yards or some fractional part thereof because it had failed to specifically deny its obligation to furnish 71,628 cubic yards which it was alleged were necessary to complete the contract. The denial of appellant's liability to furnish the greater amount necessarily includes the lesser and certainly is sufficient to put upon plaintiffs the burden of establishing not only the contract and the liability of appellant under it, but the damages suffered by reason of the

alleged breach. Again, in the affidavit of defense it is denied that the appellant is indebted to the plaintiffs in the sum of $35,814, being the amount claimed in the statement of claim, or any other sum whatever. Certainly, these denials are sufficient to put plaintiffs upon notice that the liability of appellant under the contract would be contested and if its liability be established, the measure of damages which is a conclusion of law, could not properly be determined until the evidence was in and the facts understood. This is the doctrine of Seely v. Alden, 61 Pa. 302, and numerous other cases. Independently, however, of the question whether it was necessary to include in the affidavit of defense a denial of the measure of damages inferentially set up in the statement of claim, the general rule is that the plaintiffs must prove the amount of damages sustained by them or they will only be entitled to nominal damages and that failure to deny the amount of damages alleged to have been sustained does not admit them: Lucot v. Rodgers, 159 Pa. 58; Howell v. Bennett, 81 N. Y. Sup. Ct. 555. It has been well said that it is difficult to point out in advance what the true measure of damages should be under a given state of facts. If there be different modes of measuring damages, depending on the circumstances, the court should first hear the evidence and instruct the jury afterward as to the proper measure to be applied. The underlying principle in such cases is that the damages must be such as might naturally be expected to follow a breach of the contract, keeping in mind the benefit which the contracting parties had in contemplation when the agreement was entered into. As we read the contract in the present case there was no binding covenant requiring appellant to furnish 150,000 cubic yards of earth to plaintiffs. There was a license or privilege granted to deposit on the lands of plaintiffs so much earth, estimated at 150,000 cubic yards, as would be necessary to make the grade of the road as agreed upon. The railroad company was desirous of securing a place to dump its waste material, and the appellees had such a property. These were the conditions when the contract was made. The appellees have a right to the benefit of their bargain, but nothing more. Under the facts of this case

the true measure of damages would seem to be the difference in the value of the plaintiffs' lands with the fill completed and as it was at the time of the breach with the fill only partially made. In this respect what was said in Seely v. Alden, 61 Pa. 302, applies: "It may turn out that the cost of removing the deposit in a certain case would be less than the difference in the value of the land, and then the cost of removal would be the proper measure of damages; or it may be that the cost of removal would be much greater than the injury by the deposit when the true measure would be the difference in value merely." The question of the proper measure of damages must always be taken into consideration by the court in the proper disposition of any case wherein damages are claimed: Wilkinson v. North East Borough, 215 Pa. 486. For the reason, therefore, that the proper measure of damages was not adopted in the present case the judgment is reversed and a venire facias de novo awarded.