■ Hall & Company, Inc., Respondent-Appellant, v. Continental Casualty Company, Defendant and Third-Party Plaintiff-Appellant-Respondent. Moses Moses et al., Third-Party Defendants-Appellants, and Bash Apartments Corp.. et al., Third-Party Defendants.— Cooke, J. Cross appeals from an order of the Supreme Court at Special Term, entered in Albany County on July 15, 1969. which denied motions for summary judgment. On February 22, 1966. Hall & Company, Inc.. sent a proposal to Bash Apartments Corp. which, if accepted and executed, would have constituted a contract between them whereby the former would construct a sewage treatment plant for the latter in consideration of $59,000. The proposal. calling for semi-monthly progress payments based on the value of labor and materials stored at the site or incor-

porated in the work, was never accepted by Bash. An insurance broker, not the agent of Continental Casualty Company, forwarded the proposal and other documents to Continental with a request for a payment bond. Continental, as surety, issued a payment bond on April 4, 1966, in favor of Hall as obligee and Bash as principal, guaranteeing payment on a contract described as the "written agreement dated February, 1966." Because Bash stated that the proposal documents could not be located, Hall forwarded another set on May 18, 1966. Work on the project began on May 23, 1966. On September 8, 1966 Bash returned the proposals, signed, but with the terms of payment modified so as to provide for a lump sum payment of all amounts presently owing 10 days after completion of the work. No progress payments had been made but 80% of the work had been completed. Hall accepted and signed the contract on September 12, 1966. Without dispute, Hall has duly completed its work under the contract and, except for payment of $6,000, Bash has defaulted. The parties proceeded to arbitration resulting in an award to Hall of $54,976.60 and a judgment was entered thereon. In the first place, there was no contract of February, 1966. Indeed, an affidavit of Hall's president so states and the arbitration testimony establishes that the terms of the contract were not agreed upon until September 12, 1966. The proposal submitted by Hall on February 22, 1966 was an offer to enter into a contract and its return by Bash, with changes in the method of payment, was a counteroffer which did not ripen into a contract until accepted by Hall on September 12, 1966. A surety bond attaches to the principal contract and must be construed in conjunction therewith (*Madawick Contr. Co.* v. *Travelers Ins. Co.*, 307 N. Y. 111, 118), so that, if no underlying agreement ever came into existence, there is nothing to which the surety's obligation can attach and it is, therefore, a nullity (cf. *Walcutt* v. *Clevite Corp.*, 13 N Y 2d 48, 56; 10 Williston, Contracts [3d ed.], § 1214). Thus, a bond upon a proposal, which was not accepted and which did not ripen into a contract, is not binding upon the surety (*Matter of P. J. Panzeca, Inc.*, v. *County of Nassau*, 56 Misc 2d 460, affd. 30 A D 2d 640). Where a party, intending to enter into a contract with another and prior to its execution, secures from the other a guarantee of the performance of the contemplated contract, in which the terms upon which the surety is to be bound are specified, and the contract when drawn does not correspond to the terms of the guarantee, the surety will be discharged from liability for default in the contract as made (*Page* v. *Krekey*, 137 N. Y. 307, 314). Even assuming there was a contract of February, 1966, Hall may not recover since a surety is discharged by any alteration of the contract to which his guarantee applied, whether material or not, and the courts will not inquire whether it is or is not to his injury (*Becker* v. *Faber*, 280 N. Y. 146, 148–149). Where a binding alteration operates to extend the principal's time of payment, the surety is discharged unless he has consented thereto (*Yonkers Builders Supply Co.* v. *Luciano & Son*, 269 N. Y. 171, 176; *National Park Bank of New York* v. *Koehler*, 204 N. Y. 174, 179; *Ducker* v. *Rapp*, 67 N. Y. 464, 472–474) and there is no showing here of waiver by the surety or a reservation of rights against it warranting a departure from this general rule (see 57 N. Y. Jur., Suretyship and Guaranty, §§ 169, 179, 181). Here, the principal's obligation was changed from making progress payments to making a lump-sum payment; it was not an act of leniency towards the principal by the assured through remission of a part of an obligation or waiver of full performance, such as a reduction in the rate of interest (see *Becker* v. *Faber, supra*, p. 150; *Greenwich Sav. Bank* v. *Eckford Realty Corp.*, 268 App. Div. 195). The reason for the rule regarding alteration of the principal's contractual obligations is bottomed not only on the ground that the surety cannot be held to a contract

he has not made but also because extensions of time increase the surety's risk (Restatement, Security, § 129, comment *a*). Moreover, it is clear that Continental was prejudiced by the alteration. Had Bash been making the progress payments as required in the original proposal and then defaulted, Continental's liability would have been less at default; similarly, if Bash had defaulted early in making the progress payments, Hall would have ceased work and Continental's liability would have been lessened. Order modified, on the law, so as to grant summary judgment dismissing the complaint and dismissing the first two causes of action in the third-party complaint and, as so modified, affirmed, with one bill of costs to defendant and third-party defendants-appellants. Herlihy, P. J., Reynolds, Greenblott, Cooke and Sweeney, JJ., concur in memorandum by Cooke, J.