SIATA INTERNATIONAL U. S. A.,
INC., Appellee,

v.

INSURANCE COMPANY OF NORTH
AMERICA, Appellant.

No. 73-1835.

United States Court of Appeals,
Third Circuit.

Argued Jan. 25, 1974.

Decided June 11, 1974.

M. Richard Kalter, Philadelphia, Pa., Steven J. Stein, New York City, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., Proskauer, Rose, Goetz & Mendelsohn, New York City, for appellee.

Joseph Head, William T. Campbell, Jr., Swartz, Campbell & Detweiler, Philadelphia, Pa., for appellant.

Before BIGGS, GIBBONS and GARTH, Circuit Judges.

## OPINION OF THE COURT

BIGGS, Circuit Judge.

The plaintiff-appellee, Siata International U.S.A., Inc. (Siata U.S.) was engaged in the business of importing automobiles from Italy to the United States, and entered into a sales agreement dated May 10, 1969 with Siata Auto SPA (Siata Italy), an Italian automobile manufacturer, for the purchase of 1350 "Spring" model automobiles at a price of $1,355.00 each, delivery to be made *ex* the Siata Italy plant, according to a specified monthly schedule. An "Agreement for Performance Bond" which states that it is "based upon the sales contract of May 10, 1969" for the delivery of 1250 cars [1] was entered into upon some date not shown in the record.

The bond itself, issued by defendant-appellant Insurance Company of North America (INA) (P-4), is designated on

[1]. The discrepancy in the number of cars is not explained. It apparently results from the exclusion of 100 cars, due in May 1969, from the delivery schedule listed in the "performance" bond agreement but included in the May 10, 1969 contract.

its face as an "Advance Payment Bond", and is as follows:

Advance Payment Bond

INA
## INSURANCE COMPANY OF NORTH AMERICA
### PHILADELPHIA

Know all men by these presents, That we, Siato Auto S.p.A. Strada di Lanzo 221, Turin, Italy (hereinafter called "Principal"), as Principal, and the Insurance Company of North America, a Corporation organized and existing under the laws of the State of Pennsylvania, United States of America, (hereinafter called "Surety"), as Surety, are held and firmly bound unto Siata International U.S.A., Inc., 116–11 Hillside Avenue, New York, New York (hereinafter called "Obligee"), in the penal sum of One Hundred Thousand and no/100 Dollars ($100,000.00), good and lawful money of the United States of America, for the payment of which, well and truly to be made, we find ourselves, our heirs, administrators, executors, successors and assigns, jointy and severally, firmly by these presents.

Sealed with our seals and dated this 30th day of June A.D. 1969.

Whereas, the above bounden Principal has entered into a certain written contract with the above Named Obligee, dated the 10th day of May, 1969 for furnishing and delivery of One Thousand Two Hundred Fifty (1,250) Spring Model automobiles with delivery to be completed within the period specified in the contract,

And, whereas, the above Named Obligee has agreed to advance to the Principal the total sum of One Hundred Thousand and no/100 Dollars ($100,000.) with such sum to be repaid during the term of the contract by deduction from the agreed purchase price an amount not exceeding Eighty Dollars ($80.00) for each vehicle delivered to the Obligee.

Now, therefore, the condition of the above obligation is such, that if the above bounden Principal shall repay to the above Named Obligee the lesser of the total sum of One Hundred Thousand and no/100 Dollars in the event of non-delivery of all of the 1,250 vehicles; or an amount equal to Eighty Dollars ($80.00) per vehicle for Non-Delivery of each vehicle less than the total of 1,250 vehicles contracted for, then this obligation is void; otherwise to be and remain in full force and effect.

Provided, however, this bond is executed by the Surety, upon the express condition that no right of action shall accrue upon or by reason hereof, to or for the use or benefit of any one other than the Obligee named herein; and the obligation of the Surety is and shall be construed strictly as one of suretyship only.

SIATA AUTO, S.P.A.

INSURANCE COMPANY OF NORTH AMERICA

———◆———

Siata Italy breached the May 10 contract by failing to deliver some portion of the specified number of cars. When demands for payment from Siata Italy under the May 10 contract and from INA under the bond in suit proved fruitless, Siata U.S. instituted this action against INA in the District Court for the Eastern District of Pennsylvania.

It will be observed that the condition of the bond is contained in its next to last paragraph and provides that if Siata Italy shall "repay" to the obligee Siata U.S. the total sum of $100,000 "in the event of non-delivery of all of the 1250 vehicles", "or an amount equal to $80 per vehicle for Non-Delivery of each vehicle less than the total of the 1250 vehicles contracted for, then the obliga-

tion is to be void." It is upon the foregoing terms according to the bond that INA stands liable.

Siata U.S., in its amended complaint, premised INA's alleged liability on two distinct interpretations of the bond in issue. Count one of the complaint characterized the agreement as an advance payment bond, intended to ensure that prepayments, which were to be made to Siata Italy and recovered by a reduction in the price of each car, would be repaid in the event Siata Italy failed to deliver. Under this construction, the bond would protect Siata U.S. to a maximum of $100,000.00 in advance payments. Count two of the complaint characterized the agreement as simply a performance bond, intended to ensure that Siata Italy delivered the cars as scheduled and providing a penalty for each car which was not delivered.

The numerous defenses raised by INA in its answer were primarily material to its alleged liability under an advance payment bond.

The first count of the amended complaint was withdrawn by the plaintiff,[2] who proceeded solely on the basis of the bond being one to secure performance.

The ensuing controversy as to the meaning of the bond was determined by the district court at the beginning of trial. The learned district judge deemed the bond to be a clear and unambiguous obligation, entered into by INA, to pay $80.00 per car for all undelivered cars up to 1250. Subsequently, a directed verdict for plaintiff was granted on the issue of liability and the sole issues submitted to the jury were a determination of the number of cars which were not delivered and the corresponding damages. INA challenges this holding and asserts that the language of the bond unambiguously contemplates a guarantee of repayment of a loan.

On examination of the copy of the bond in evidence, we see that it is designated an "Advance Payment Bond"[3] and though the nomenclature is unimportant we find that the first "Whereas" clause states that Siata Italy as principal agreed by a written contract dated May 10, 1969, to furnish and deliver to Siata U.S., 1250 "Spring Model automobiles [to be manufactured by Siata Italy] . . . within the period specified in the contract . . .". This may be considered to suggest the bond is a performance bond, nonetheless, the second "Whereas" clause refers to an agreement for Siata U.S. to advance $100,000.00 to Siata Italy which is to be repaid by deducting $80.00 from the cost of each of the 1250 cars to be delivered. This suggests very plainly an advance payment bond. The "Now, Therefore" clause, "The Condition of the Bond", seems to speak *both* of performance and advance payment by referring to a strict obligation to pay $80.00 per undelivered car in the event of default by the principal but casting this obligation in terms of repayment. As a matter of fact, the bond itself is a miracle of ambiguity. The district court should have received evidence to clear up the ambiguity instead of attempting to construe the instrument on its face. *See, e. g.,* Janos v. Peck, 21 A.D.2d 529, 251 N.Y.S.2d 254, aff'd, 15 N.Y.2d 509, 254 N.Y.S.2d 115, 202 N.E.2d 560 (1964); In re Plasterer's Estate, 413 Pa. 513, 198 A.2d 525 (1964); Kennedy v. Erkman, 389 Pa. 651, 133 A.2d 550 (1957). *See also,* Annot., 40 A.L.R.3d 1384 (1971); 17 Am.Jur.2d Contracts § 272 (1964); 4 W. Jaeger, Williston on Contracts § 629 (1961).

The trial court excluded all defense exhibits relating to the transactions between Siata Italy and Siata U.S. and INA, from going to the jury on the

---

2. At p. 37a, Mr. Head, counsel for appellant, says: "Sir, I think it should be stated for the record the plaintiff has withdrawn Count 1 of the complaint and is now proceeding solely on Count 2. Is that correct?" The Court: "That is correct."

3. It is noteworthy that the agreement between Siata Italy and Siata U.S. for a bond is entitled "Agreement for Performance Bond" (P–3).

grounds that they related to defenses which were "overruled" by the finding that the instrument in suit was a performance bond. The only evidence allowed was that relating to the number of cars. delivered. As we have said, the court instructed the jury to bring in a verdict for the plaintiff, Siata U.S., leaving only the issue of damages for the jury. This was repeatedly objected to by INA. Should the district court, upon considering all the circumstances, determine the bond to be one to ensure repayment of advances, it will be necessary to allow INA to put in defense testimony therefore. The case is one apt for special verdicts and interrogatories pursuant to Rule 49, Fed.R.Civ.Proc., 28 U.S.C. *See* 4 W. Jaeger, Williston on Contracts § 616 (1961).

We, of course, do not suggest or decide the merits of any defenses raised by INA such as whether any variations in the contracts may be deemed to have vitiated the obligation of the surety or whether advances have in fact been repaid.

The court below, as was required by our decision in Neville Chemical Co. v. Union Carbide Corp., 422 F.2d 1205 (3 Cir.), cert. denied 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970), looked to the law of the place it deemed had the most significant relationship to the parties, transaction and issue, in applying the law of Pennsylvania.[4] It will be noted that the contract of May 10, 1969, Exhibit P–2, provides that the agreement shall be governed and interpreted in accordance with the laws of the State of New Jersey, whereas the "Agreement for Performance Bond", Exhibit P–3, referred to above, provides, "This agreement shall be governed by and interpreted in accordance with the law of New York State." Upon remand, the district court may well desire to reconsider the effect of these declarations. We point out that in considering additional evidence to determine whether the bond is an advance payment bond or a performance bond, additional state interests and contacts may become manifest. We conclude, however, that the district judge was correct in applying this theory.

INA objected to the evidence of Benjamin, who it characterizes as a financial adviser of Siata U.S., and deems the evidence offered in respect to the number of cars delivered to the plaintiff's agent in Italy to be grossly insufficient and not within the provisions of 28 U.S. C. § 1732. INA states its position as follows: "We thus have a 'financial adviser', employed by a non-party, testifying from the records of a New York bank (which records apparently incorporated reports received from an Italian bank, which reports in turn were based on untrustworthy reports received from plaintiff's Italian agent) as to how many automobiles were delivered to plaintiff's Italian agent in Italy!" A foundation for the admission of the records into evidence under § 1732 must be laid properly. The records were those of Marine Midland Grace Trust Company of New York, whereas Benjamin who testified as to them was an adviser to Siata U.S. and an employee of State Funding Corporation. It does not appear that Benjamin was qualified to testify as to the records of the bank, nor does it appear that he sufficiently laid the basis for the admission into evidence of the records; however, once an adequate basis be laid, the provisions of § 1732 make it clear that such objections go to the weight of the evidence offered by way of business records as opposed to their admissibility.

Counsel are admonished to examine the law on this subject carefully and brief it adequately to the end that they may be of some assistance to the trial judge.

INA was at liberty to bring in contravening testimony if it desired to do so

4. The appellant insists that New York is the "center of gravity" and that New York law should be applied, citing Hall & Co. v. Continental Casualty Co., 34 A.D.2d 1028, 310 N. Y.S.2d 950 (1970), to relieve it of all liability.

and it could have been received by the district court despite its ruling as to the bond being a performance bond.

The judgment will be reversed and the cause remanded to the district court with directions to grant a new trial and at that trial to proceed in conformity with this opinion.